242556. Thank you. Good morning, Stephen Bergstein, Lovie, Alex. We have two primary issues here on appeal. Hostile work environment, disparate treatment, and let me start with hostile work environment. The jury may find it was a pervasive regime of sexual harassment based on sex at the town police department, and the plaintiff was victimized by this. The plaintiff testified that throughout her employment from 2011 through about 2019, she was subjected to unwelcome and offensive touching and comments, and her affidavit repeatedly mentions, and some of this is mentioned in the district court ruling in the statement of facts, phrases such as, throughout my career, multiple occasions, whenever the opportunity presented itself, frequent and noticeable, language like that. That language permits the inference that the harassment was pervasive. A lot of the cases that talk about hostile work environment, there's some quantification of it. You know, it happened at least three times a month, or at least four times a month. And you know, I know in this case, your argument, you're focusing on the hostile work environment claim, as opposed to the denial of training aspect of the court's decision. But in this case, is it a concern that the plaintiff was employed from 2012 to 2019, but only began to document these instances in 2017? In other words, I understand your argument about the claim that this started from day one, but in some of the cases where, you know, there are statements like that, there's a quantification of it. It happened, you know, monthly, weekly, once a week, twice a month. Here, we have six incidents in a two-year period, right? In her memo. Yeah, so I'm wondering if that makes a difference. No. I don't think so. Maybe some of the cases involve those facts. But the general rule is that if you say it happened all the time, then the jury can find it happened all the time. And if you want to cross-examine the plaintiff and say, well, your memo doesn't include everything, and you're not more specific, that's for the jury. And the jury could say it's not credible because she doesn't remember everything. But that's not what this court says on summary judgment, that all the time means pervasive. And we have repeated reference in her affidavit that it was basically happening all the time for at least a seven, eight-year period. And the judge mentioned that in the opinion, at least in the statement of facts, the judge quoted some of that language. But then the judge sort of limited its analysis in the legal section to the five or six examples in the memo. But the jury doesn't have to view the evidence that way. And what makes this more compelling for us is that the district court did say that the jury could find it was motivated by gender. So that gets us over that element of the claim. Why do you think that the district court just limited its analysis to those six incidents? I don't know. But I think when you have a hostile environment claim, sometimes I guess you focus on the specific instances. And I guess the general principle that I'm relying on in this case was overlooked. So one of the, as I understand it, but I may have misinterpreted or misread it, one of the reasons that the district court, or one of the factual basis that the district court focuses on is the fact that some of the contact occurred in the context of training sessions. Rifle. Is that right? Rifle range. Rifle range. And she said, well, it may not be harassment if it's a routine part of the workplace. But that's not how he was treating the men during rifle practice. And the men submitted affidavits to that effect. He didn't do that to us. And that was sort of a running joke in the workplace. He doesn't treat us that way. Why is he doing it to her? So again, that's for the jury, I guess. Well, touching during rifle practice is not harassment because you have to touch people, but then the men are going to testify he wasn't doing it to us. So it's not necessary to do that training. Not necessarily. To touch her. Exactly. And when you consider the other examples of harassment, the way he was seating, the way he seated himself or postured himself when he sat with her, or he got too close to her face when he spoke, all that examples of harassment, it's consistent with her testimony that when he had the opportunity to really touch her during rifle practice. So I'm focused on the fact, Mr. Bernstein, that you started out your argument by reference to the pervasiveness of the contact and the hostile work environment and not on the severity of any particular contact. Well, severity normally means outrageous touching. That's how I interpret severity. I mean, severe or pervasive is sort of a buzz phrase for regular hostile work environment. So I would say it's severe or pervasive, but it just sounds more pervasive than she wasn't sexually assaulted, for example. So that's what comes to mind when you think of severity. But if it happens for eight years, then I guess you can say it's severe also. Well, no, no, no. Right. So those are two very distinct concepts, as I think you know. And severity, for example, would constitute a single contact, and that's severe enough. Are you suggesting that there's not a single contact, at least in this record, that would rise to the level of a severe form of sexual harassment? I would bet that the plaintiff would say that when he was touching her during rifle practice, it felt severe to her. But when we have the severe or pervasive framework- So you're relying on pervasiveness? Just because the cases say, when you say it happens regularly, then there's a finding of fact that it may be, jury can find that it was pervasive. So that's the basis for reversal. Now, town liability. Just to start out, even if this court finds there's no liability against the town for the harassment, there's certainly liability against Nightingale for the harassment under 1983 and the state human rights law. But the jury can find liability against the town because she complained first in early 2018 and the chief, Wynn, did nothing, despite town policy that he needs to conduct an investigation. So that's deliberate indifference under section 1983 and it would be condemnation under state law, which is- Does he not talk to Mr. Nightingale? A year later- And then the conduct more or less stops? A year later. A year later. He should have talked to Nightingale. How's that deliberate indifference? Because he found out that Nightingale was harassing the plaintiff in early 2018 and he did nothing. And even though town policy requires him to follow up, when she told him in early 2019, it's still going on. Then he talks to Nightingale, but that's a year. And you don't wait a year to investigate a sex harassment policy, as we know. The district court in its analysis ignored the deliberate indifference from 2018 and only focused on 2019. By 2019, Nightingale admitted, yes, I may have done it. And then the harassment stopped, but you have a year. Deliberate indifference includes a lengthy period of delay before- What do you make of the fact that the claim was that he didn't do anything because she didn't want to disclose the complaint? The law in this circuit says that it doesn't matter what she wants. The Malik v. Carrier Corp. 202 F3rd 97, there's language here about the company's duty to investigate is not subordinated to the victim's desire to let the matter drop and that the employer has to investigate anyway, even if the plaintiff says, don't do anything, don't do anything, because the jury could, first of all, the jury may assume the plaintiff is just afraid of what may happen if there's an investigation, but more broadly, management has to protect the women in the workplace from further harassment. No argument there. Obviously, people who attend training are, you know, if management receives a complaint, they have to address it. That's not the point. I guess the point I'm trying to make is how does that impact the factors that you consider in determining a hostile work environment? Because that's what we're focused on here, right? Not whether Captain Nguyen should have done the right thing in 2018 and put a stop to it, whether or not she wanted the complaint public. The question is the factors of hostile work environment. The frequency, the severity, whether it's physically threatening or humiliating, whether it altered the person's work performance and the psychological impact. It wouldn't affect the factors of whether it's severe or pervasive. The only place it might fit is maybe on town liability. I guess management can say, well, she didn't want him to do anything, but the language I just read you undermines that, but it wouldn't affect whether it's severe or pervasive. Right? I mean, it still happened. Right, right. And so, you know, that would fall into the employer liability. The other factor to consider on whether there's a hostile work environment, and I know I've gone over my time, is the personnel actions that were motivated by sex. You know, the training, the instructional denials. This court says facially neutral personnel actions can factor into the hostile work environment analysis if the guy who's denying the training is also the one who is sexually harassing her. And she did hear him say something along the line of women should not be police officers or women should not be cops. She heard it or he was known to have said that to people? She heard it. I thought that her witnesses said they overheard him say that. I thought she heard it. It's in her affidavit. I thought it was burglary. So that factors into the issue of intent. And since it's the same guy, then you can assume the training denial is... No question this is not good. And Nightingale being promoted is also not good. So that is, you know, obviously the conduct is not good. It is gender-based. But I'm wrapping my head around whether it constitutes a hostile work environment and focused on those factors. If it happened for seven or eight years, and she said it was numerous occasions, whenever the opportunity presented, frequent and noticeable, too numerous to mention, consistently dismissive, the jury can credit that and say, yes, in our understanding of the world and how the world works, because we're jurors and we're not lawyers, that's how people talk. He did it all the time. And jury could say, yes, I can see that. I can understand why that would be true and why you don't remember every example. You don't walk around with a diary, although some people do, most plaintiffs don't. And so the jury can accept our version of events or the jury can say, you know what? We want more specifics. And we're not hearing it, but that's for trial. That's not summary judgment. Thank you. Thank you very much. You've reserved three minutes for the bell. We'll hear from your friend on the other side. Good morning. Good morning, Your Honors. May it please the Court, Ksenia Primo from Bonne-Chan Akin-Kin representing Town of Camillus, Defendant Chief Nguyen, Captain James Nightingale, and Supervisor Mary Ann Hogan. Your Honors, plaintiff hostile work environment claim fails on every element. The conduct is not, the conduct here is trivial. It's not sexually driven. Well, it's trivial. You know, I'm not sure, Counsel, you would qualify this as trivial, some of the conduct that has been alleged. Maybe it doesn't amount to a hostile work environment, but are you claiming that it's trivial? The allegations here certainly do not rise to the level of severe and pervasive. We do have a written complaint. That's different from saying it's trivial, right? Which is probably why the town found itself being sued in the first place. May I rephrase? It is non-sexual. Here, what we have, we have a written complaint. Well, it's not, what do you mean it's not sexual? Isn't the claim that he didn't do this to men? It's gender-based. Are you saying he was, you know, holding men and touching men's arms and doing that during the... I think there is a difference between a gender-based contact and a sexual contact. I do not think the plaintiff here is claiming... No, he wasn't, the claim is that he wasn't trying to have sex with her, but that doesn't mean it wasn't gender discrimination, because he only treated her, a woman, this way, correct? Correct. All right. Why don't you focus on why you think it's not a hostile work environment? Because you getting into qualifying this as trivial and not sex-based doesn't really, you know, at least I'll speak for myself, I have a hard time believing that it's not gender-based. Sure, Your Honor. And the district court looked at it that way, right? Judge D'Agostino said, okay, even if we assume that this conduct is based on her gender, she still does not pass the next test, which is, you need to show that it's severe or pervasive. Here, again, we have her own complaint to Chief Wynn, it is in writing, and she is alleging that Captain Nightingale, you know, put his hand on her, briefly, on her shoulder, arm, or, you know, patted her back. Is this not on summary... Well, most of this is on summary judgment, correct? Correct. Okay, you said complaint, but okay. So on this record, in both her deposition and her affidavit, as corroborated by male counterparts, male colleagues, she, as I understood it, but you can correct me if I'm wrong, says, and they corroborate this, that he repeatedly, over a period of time, whether it's documented or undocumented, as a separate issue, touched her, including on her entire back, sometimes on the top of her, one time on the top of her, right atop her groin area, her arms, and so on, and as Jishkan mentioned earlier, the male colleague said, that never happened to us, so it's not necessary to do this job. So the allegation that you're referring to, a lot of the touching occurred on the firing arms range when he was instructing her, and she did get a lot more instruction than other folks in the department, though that could be related to the frequency of the training, and we don't know what their level of training was at different points in time, maybe. Let me pose to you, and I'll phrase it as a hypothetical. If there is one person, a woman, who is being touched repeatedly by a supervisor, and that supervisor says it was for purposes of training, and there are 30 men who are similarly situated, who say, he never touched me, what inference, what reasonable inference can we draw from that? Your Honor, I see your point, but. No, no, no, just answer the question. What reasonable inference can we draw from that? It must be based on gender. I think that's what you are suggesting here, but the facts in our case are very different. When she complained to the town, she wasn't complaining that he's touching her all the time. She had a written complaint. She identified instances of when she was touched and how she was touched. So you're talking about the complaint? To the town, and 20, correct. She had a written complaint in this case. Correct, and that's what the town investigated. Are we limited to what she put in the complaint? I'm sorry, say it again? Are we limited to the allegations that she made to the town? Absolutely not, but I think it is telling that her in written complaint, she tells us that she recorded, she says, I didn't record everything that happened to me. I made sure to record only the ones that were really, really offensive, right? You have an excellent, excellent cross-examination. It's excellent for cross-examination, but why does that preclude a jury from making that assessment? Because the courts are here to weed out the allegations that don't rise to the level of severe pervasive. All the case law that we looked at, I do not know or I'm not aware of a single case, and plaintiff has not cited a single case, where the court found severe pervasive just based on touching. That is not of your private body parts, not sexual in nature, and can be- Well, couldn't the jury assume that reaching around and during the training to hold the gun and everything that that was sort of pseudo-sexual in nature, I mean, that's pretty invasive of one's body space, and one could say, and this could be a disputed factual issue, well, look, you gotta do that sometimes when you're training someone, they're not holding the gun right. And that's, I suppose, would be the town's argument. And the plaintiff's argument would be, well, maybe so, except if that trainer only ever does it with one woman, and you have the male trainees who say, he never did it with me, and I never saw him do it to any other man, doesn't that allow for a permissive inference? That it was, and I guess what I'm wondering is, now that we accept that that's a permissible inference of gender-based conduct, why is that not also sort of something that has heavily sexual overtones, wrapping one's arms around from behind? Yeah, Your Honor, that allegation came in only in reply to defendant's motion for summary judgment. Are you saying we can't consider it? It's not in the summary judgment record? I would say it's less probative value, and there are a line of- Hang on a second, is it in the summary judgment record? Yes or no? Correct, yes, it is. Okay, so it gets less or more probative value depending on how early the fact was introduced into the summary judgment record? No, but what I would rely on, I would rely on a line of cases that says that you cannot expand your allegations at the late stage, and especially if the allegations are contradictory to- That's actually wrong, that's actually wrong. Well, maybe you're going to add that if it explicitly, clearly, and unequivocally contradicts deposition, and that affidavit does not unequivocally contradict her deposition, would you agree with that? That's the language that we've used. That's the language to which you're referring. Would you agree that it does not unequivocally contradict her deposition? It adds. Again, the conduct that she was alleging throughout this entire litigation does not rise to the level of severe pervasive. No, no, no. And even if we take that one particular- Would you answer my question? Yes. Yes, it does not- Because you made an argument, okay. It does not contradict. So we can, in answer to Judge Nardini's question, we can consider the affidavit. Correct, but may I elaborate as to why that particular incident does not raise to the level of severe pervasive? One, it is alleged in one of the affidavits, and it may be time-barred. It's not because all the allegations pre-October 2017 are time-barred in this case. This particular incident is dated in fall 2017. So there is that argument. Then, one incident of Captain Nightingale doing this during the firearm instructions, especially if he was showing her how to discharge the gun, is not severe pervasive. Especially, we don't know how early or late in her training she was at that point in time. Well, hang on a second. I don't think you can ever say that one incident standing alone is pervasive, right? But she's not-  She hasn't, well, I know, but let's just take them apart because we've been talking about severe and pervasive as somewhat distinct issues, right? So she did not provide evidence that that was the only moment she was ever subjected to some sort of discriminatory touching, right? So I guess I'm not really sure what your point is, that there's no way of saying that one incident is pervasive because she's not claiming that one incident is pervasive. She's saying that is one particularly notable, perhaps the most notable incident in a string of things that were done to her. So let's just take the pervasive part. What is your point on that? Okay, so it wasn't severe enough for- Okay, so you're only focusing on the severity. Yeah. Okay, so tell me why it's not severe enough. Because we have to take into account the context where it occurred. It occurred in a professional setting. He was instructing her in a firearm training. It is not unreasonable to do that when you are showing somebody how to fire a gun or how to aim it, or I don't know what the context of that instruction was. But again, it's happening on the firing arms range. But doesn't that really come down to maybe there's an innocent explanation for what he did? I'm sorry, say that again? Doesn't your argument come down to saying there's an innocent explanation for what he did? Yep. And the other side says, well, there's a non-innocent explanation, and that's that he never did that to a man, so come on, that's why she was feeling so uncomfortable about that. And on the summary judgment decision, why is it that we would accept the inference favorable to your side? You're the one moving for summary judgment. Why wouldn't we adopt the factual inference of the other side? Well, I mean, the question is, objectively, does this rise to the level of severe... But it seems to me we have to draw the inferences in favor of your opponent here, right? Yes. So why would we then say, in the context of training, it's perfectly fine to reach around and hug somebody from the back? Because that's an inference in your favor. Seems to me you have to make the contrary inference. Even assuming that he reached around and it was totally gender-based, physically, sexually based, it's not severe enough. That's the argument you have to make. But you seem to be fighting that there's anything wrongful about it at all. But the only way for you to survive this on the summary judgment is to embrace his view, so to speak, and say, even if you take it that it's sexual, that it's wrong, it's just not severe enough. But that's not the argument that you were making. So, Your Honor, the courts dismiss these types of allegations all the time on the motion for summary judgment, even though they have to make inferences one way or the other. They look at them objectively. They look to see, does it rise to the level of severe pervasive? For example, in Sue's case, the defendant leered repeatedly, grabbed the plaintiff, followed her closely, and even kissed her in an elevator. The court dismissed. In Lisa Boo, the defendant touched shoulders and buttocks, followed the plaintiff into her bathroom, and invited her to his apartment, made sexual propositions. Not enough. In Lucas, there was repeated touching, crude comments, and even sexual propositions. The claim was dismissed. In Perry, this court itself had that a captain's massage and sexual proposition did not meet the severe or pervasive threshold. In our case, no sexual jokes, no sexual innuendos, no propositions, no sexual advances, none of that. So her allegations are far less severe than what the courts dismissed in the cases that we cited. Mr. Bergstein, maybe helpfully, maybe not to him and his client, has not quite conceded, but acknowledged that he's very focused on the pervasiveness. And the courts in those cases analyzed it under the same standard. Judge D'Agostino looked at all the affirmations submitted in this case, including plaintiff's affidavit. She did not disregard anything. She concluded that the conduct alleged was not severe or pervasive. Do you stand the motion for summary judgment? We've got your argument very well in mind. Thank you. We'll hear from Mr. Bergstein on rebuttal. I thought I heard the argument that there's no case where you can prove a hostile environment without touching. First of all, there is touching in this case. She talked about massaging the shoulders and the arms, but I don't think that's even true. I think there's a lot of cases where you can prove a hostile environment based on language alone. But more broadly, if we're gonna be arguing about- Well, but there's no language here, right? So do you have a case where it was this level of touching and it was found to be pervasive and egregious enough to amount to a hostile work environment? If it's happening- That's the best case that you can point to us where the conduct is similar, that it amounts to a hostile work environment. It's probably in my brief. But touching is worse than language, I think. If you're massaging the shoulders or arms or back on a regular basis, I mean, that goes beyond offensive language. Touching somebody against their will-  She said- Tell me where in the deposition testifier, I know that she said, you know, this kind of thing went on, but did she say there was constant massaging? I don't think she was that specific. Her affidavit, a good deal of our case is actually in a four or five paragraph- Yeah, remind me of the page in the appendix. 1066 to 1067. And she says, paragraph six, in the course of my career harassed me in the form of unwelcome and offensive touching of my body, including my arms, shoulders, and neck. Multiple occasions, he invaded my personal space without making physical contact, stood behind me, sat in close proximity whenever the opportunity presented, making me uncomfortable, crude behavior, took a seat in the chair on many occasions, sitting with his legs wide apart so his crotch was noticeably visible. You know, if she says this was happening on a regular basis, that's- But none of the touching part. Well, she mentioned- I just want to focus a little bit. The first sentence says he harassed me in the form of offensive touching of my body, but she doesn't say, and he repeatedly did that. I mean, we have six episodes, right, which are specific, wrapped around the arms during the training, sat so the left and right arms were, you know, could touch. Well- But- What about- I mean, at this point, we are at the discovery phase, so this is the time to lay out your case and your particulars. And I don't see how we can tell the district court, hey, you should have read this when she didn't say it and said he repeatedly, over the course of whatever these years are, was touching my arms and shoulders and giving me back rubs. She doesn't say that. Well, what about throughout the course of my career, he harassed me in the form of unwelcome and offensive touching of my body, including my arms, shoulders, and back. Course of my career, 2011 to about 2019, that's eight years. Well, throughout the course, but not how often. Throughout the course sounds frequent when she says throughout the course of my career. I guess- But you gotta juxtapose that to the instances she did document, and there were six in two years. So that's why I start, during the first part of your argument, I asked for you to explain why the cases where there's offensive touching, but it's twice a week for years, or twice a month, or there's some quantifier. The rubbing of the back, I thought, was in the context of announcing that a colleague had cancer, as I recall reading that. But maybe you can show me where she's alleged other instances of rubbing of the back. When she says multiple occasions, many occasions, throughout the course of my career, the jury can find- Whoa, whoa, whoa, hang on. You just mixed two sentences. The first one says throughout the course of my career, he harassed me, right? The second one said multiple occasions where he invaded my personal space without making physical contact. So the multiple occasions refers to no physical contact. She did not say multiple occasions of physical contact. So you can't take two sentences and just start splicing clauses. But we can't microanalyze each act of harassment and say, well, that wasn't enough, that wasn't enough. We look at the totality. No, I agree, I agree.  But you can't splice sentences together. No, I'm not- If she said multiple occasions, I had a green car, and another one, she said, over the course of my career, I went hiking. You can't say, well, on multiple occasions, I went hiking. Like, you can't take two sentences and splice them. I guess her argument is she's describing various offensive acts by this guy that taken together show that over an eight-year period, he was harassing her frequently. And Mr. Burstein, does your theory of hostile work environment that supports that claim rely on physical touching? Sure, sure. But does it rely solely on physical touching? Not solely on physical touching, but physical touching is part of the equation. Well, I understand that, but does it rely on anything else? Ask him again. Does it rely on anything else? Sure. Invading her personal space. What does that mean, just concretely? What did she say? Invading my personal space without making physical contact. He would stand behind me, purposely sit in close proximity when the opportunity presented, making me uncomfortable. Sitting in a crude manner on multiple occasions with his legs wide apart. Then you have the training denials. You know, I think, once we start arguing whether it's pervasive enough and what qualifies as pervasive or severe or pervasive. Remember the language in Gallagher versus Delaney, Judge Weinstein, when he said, well, if, you know, juries know what qualifies as a hostile work environment, maybe better than judges and lawyers do. And once we start examining the evidence in this manner, it sort of signals that this really is a question for the jury. And that's one of the most important things this Court ever said in a sex harassment case, that when it's a close call, when you're not really sure, and I'm not saying this is a close call, but if it is, then we let the jury decide it, because juries know, over the course of evolving standards over time, what qualifies as sex harassment. Although, over time, for whatever reason, we've arrogated to ourselves the authority to be gatekeepers with respect to what qualifies as severe or pervasive conduct. Well, they have to draw the line someplace. But if it's, we're talking about language like this, on a record like this, I think this fits within the Gallagher framework. I think we've got your comments very well in mind. Thank you, we'll reserve a decision.